ROBERT McL. JACKSON, Appellant, *v.* HUNT, HILL & BETTS et al., Respondents.

First Department, March 19, 1964.

*Robert McL. Jackson,* appellant in person.

*Herbert P. Polk* of counsel (*John M. Hadlock* with him on the brief; *Lowenstein, Pitcher, Hotchkiss & Parr,* attorneys), for appellant.

*James E. Bennet, Jr.,* of counsel (*Helen T. Ives* with him on the brief; *Hill, Betts, Yamoaka, Freehill & Longcope,* attorneys), for Hunt, Hill & Betts and others, respondents.

*William E. Logan* for William Logan, Jr., and another, respondents.

BOTEIN, P. J. Plaintiff was a member of a firm of attorneys constituted by a partnership agreement dated December 14, 1953. He and two other partners, A. V. Cherbonnier and Mahlon Dickerson, withdrew from the firm as of December 31, 1954. Severance agreements were made with Cherbonnier and Dickerson fixing their rights in the firm's assets and earnings as of the withdrawal date, but no such agreement was made with plaintiff. Differences ensued between him and the continuing partners, particularly with regard to plaintiff's claim that he was entitled to participate in fees earned but unpaid at the time of his withdrawal. To resolve the differences plaintiff brought this accounting action against the firm and its continuing partners and obtained an interlocutory judgment which sustained his claim, directed an accounting and appointed a Referee to take and state the account. The interlocutory judgment was reversed in this court but reinstated by the Court of Appeals, in each case by a divided Bench (see *Jackson* v. *Hunt, Hill & Betts,* 8 A D 2d 414, revd. 7 N Y 2d 180). The report of the Referee was confirmed at Special Term and plaintiff appeals from the order of confirmation and the judgment entered thereon. We discuss below those exceptions to the report which in our view are well taken.

1. Under the partnership agreement a withdrawing partner was entitled to be paid his share of the net profits, determined as of the date of withdrawal, but the firm was permitted to delay payment for one year from the withdrawal date. The agreement required an estimate of the net profits as of the withdrawal date to be made by certain of the partners and the estimate was to be deemed the actual net profits. In the present case no estimate was made but the Referee found that plaintiff was entitled to share in net profits of $340,955.53.

The partnership agreement allocated net profits among the partners in accordance with an attached participation schedule. Under this schedule, it is undisputed, one partner was entitled to 1% of the net profits and the remaining partners were each entitled to a specified number of " units of participation " in the other 99%. As of December 31, 1954 there were 132 units in all, of which the schedule assigned 12 to plaintiff, 20 to Cherbonnier and 10 to Dickerson. The Referee concluded that plaintiff was entitled to 12/132ds of the 99%, that is to say, to 12/132ds of $337,546, or $30,686.

Plaintiff contends that the Referee should have used 12/102ds as the fraction instead of 12/132ds. The contention is based on the fact that under the severance agreements with Cherbonnier and Dickerson they were to keep all fees to be received after December 31, 1954 from the clients they had brought to the firm, in return for releasing their fractional interest in the fees to be received after that date from all other clients of the firm. The argument is that " by operation of those agreements the plaintiff was to participate in the 30 shares in uncollected fees released by Messrs. Cherbonnier and Dickerson." The Referee was of opinion that the settlement with Cherbonnier and Dickerson " could not operate to either increase or decrease plaintiff's right to 12 units."

We conclude that the dollar amount of plaintiff's participation has been understated. Plaintiff was entitled to 12/132ds of 99% of the net profits of the firm to and including December 31, 1954. Included of course in net profits were the amounts later collected by Cherbonnier and Dickerson, just as the amounts later collected by the firm were so included. But defendants have accounted only for the latter amounts; those collected by Cherbonnier and Dickerson are unknown and are not reflected in the figure of $337,546. There is no reason, therefore, to suppose that Cherbonnier and Dickerson gained or lost by the severance agreements. Since the exchange of amounts receivable was negotiated at arm's length, with all parties presumably motivated by self-interest, we must on this record assume they intended that the Cherbonnier and Dickerson collections would equal what they would have received by virtue of their 30 units had the severance agreements not been made. Their 30 units having been satisfied, the $337,546 (as augmented to reflect other rulings hereinafter made) should be apportioned ratably among the remaining 102 units, and plaintiff's portion would thus be 12/102ds. We cannot conceive that when plaintiff and defendants settled with Cherbonnier and Dickerson (for plaintiff as well as defendants signed the severance agreements, which were executed before plaintiff announced his resignation), any of the parties intended a different result. Such an intention cannot be found without a concomitant finding that, for reasons undiscoverable, plaintiff was willing to make, and defendants expected to receive, a donation of part of his share of net profits.

2. In January, 1955 a check in the amount of $12,000, issued by the firm to its own order, was deposited to the credit of the firm in a bank in Tokyo, where the firm had its Japanese office.

The check was dated December 20, 1954, and the firm's accountants treated the $12,000 as a 1954 expense. However, testimony by Cherbonnier, as well as by plaintiff, shows an understanding with the other partners that the amount was not to be a 1954 charge, and we so hold. It is credible that the withdrawing partners, seeing a substantial expenditure proposed from which they anticipated no benefit, should object to debit for any part of it, and we find no persuasive contradiction of their testimony. Defendants point out that the funds were transferred to Tokyo pursuant to an agreement between the New York office and the Tokyo office that the former would pay the latter for services and disbursements at the rate of $1,000 per month " commencing January 1, 1954." The agreement was not executed, however, until December 21, 1954, after the intended withdrawal of plaintiff, Cherbonnier and Dickerson was known.

3. The Referee reported that " the plaintiff's share of the fees collected by the firm in yen is 2,207,264.26; the equivalent in American dollars is the sum of $6,131.29 ", but that " since the Japanese currency is frozen, I do not report that plaintiff is entitled to a judgment in dollars nor is he entitled to a judgment in yen. When and if the defendants receive payment in yen or its equivalent in dollars, at that time and not until then is plaintiff entitled to payment of his share." The judgment recites that " plaintiff is entitled to receive from the aforesaid defendants 2,207,264.26 Japanese Yen, but that the plaintiff may not have execution therefor at the present time in view of the present Japanese governmental restrictions on transactions involving the conversion or export from Japan of yen," and that " plaintiff may, on notice, at any time, move at the foot of this judgment for any other, further or different relief of an equitable nature or otherwise that may be appropriate, with respect to the aforementioned Japanese Yen ".

We see no reason why payment of the sum of $6,131.29 should be deferred. One purpose of the provision directing an estimate of a withdrawing partner's share of the net profits was, as the Court of Appeals remarked, " to close out his relationship to the firm quickly " (7 N Y 2d 180, 185). The partnership agreement, executed while exchange restrictions were in effect, contains provisions relating to the firm's operations in Japan but no inkling that a withdrawing partner's participation in the profits of those operations is to be postponed. Nor is payment in dollars inequitable to defendants. The fees payable in yen have long since been collected, and defendants have used plaintiff's share for their own benefit, with a consequent *pro tanto* elimination of the need for converting dollars into yen to meet

the expenses of the Tokyo office and the special allowances granted by the partnership agreement to the partners assigned there.

4. Denial of all interest to plaintiff seems to us in conflict with the equitable principles which govern a claim to interest in a partnership accounting (see *Roth* v. *Zaidenberg,* 272 App. Div. 726, 728, affd. 298 N. Y. 809; cf. CPLR 5001, subd. [a]). There would have been no claim but for the failure to make the required estimate of net profits. That default, to be sure, stemmed from an interpretation of the partnership agreement which was also adopted by 6 of the 13 Judges who considered the matter. But whatever equity inheres in the circumstance that defendants raised an arguable issue can hardly be accorded the conclusiveness urged by defendants. The most significant factor, we should think, is that by virtue of unsuccessful litigation defendants have had the use of plaintiff's share of the fees collected after his withdrawal. As most of the fees were received in 1955, and in earlier as well as later months of that year, we regard the allowance of interest from December 31, 1955 as the equitable solution.

The judgment should be modified to reflect the additional amounts due plaintiff in accordance with this opinion. The parties should be able to agree on such amounts and may submit an appropriate stipulation. If, however, they are unable to agree, the case will be remanded to Special Term to determine the amounts and correct the account accordingly.

The judgment entered on April 30, 1963 and the order entered on January 24, 1963, should be modified, on the law and on the facts, to accord with the rulings in this opinion and, as so modified, should be affirmed, with costs to plaintiff. Review of the order entered on March 6, 1963 denying resettlement of the order entered on January 24, 1963 is not entertained as academic.

RABIN, MCNALLY, STEVENS and EAGER, JJ., concur.

Order and judgment unanimously modified, on the law and on the facts, to accord with the rulings in the opinion filed herein, and, as so modified, affirmed, with costs to appellant. Review of the order entered on March 6, 1963 denying resettlement of the order entered on January 24, 1963 is not entertained as academic. Settle order on notice.